James C. Shah (SBN 260435)
Jaclyn M. Reinhart (SBN 317622)
**SHEPHERD, FINKELMAN, MILLER**
 **& SHAH, LLP**
1230 Columbia Street, Suite 1140
San Diego, CA 92101
Telephone: 619-235 2416
Facsimile: 866-300-7367
Email: jshah@sfmslaw.com
         jreinhart@sfmslaw.com

Ronald Kravitz
**SHEPHERD, FINKELMAN, MILLER**
 **& SHAH, LLP**
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: rkravitz@sfmslaw.com

*Attorneys for Plaintiff, Individually and as*
*Representative for the Proposed Class and*
*Sub-Class*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONARCH BALLROOM, LLC,<br><br>            Plaintiff,<br><br>vs.<br><br>FARMERS INSURANCE COMPANY, INC;<br>FARMERS GROUP INC.; FARMERS<br>INSURANCE EXCHANGE; FIRE<br>INSURANCE EXCHANGE; TRUCK<br>INSURANCE EXCHANGE AND DOES 1<br>THROUGH 20, INCLUSIVE,<br><br>            Defendants. | Case No.:  2:20-cv-5493<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

1
CLASS ACTION COMPLAINT

Plaintiff, Monarch Ballroom, LLC ("Plaintiff"), on behalf of itself and a nationwide class and California sub-class of all others similarly situated (defined below), brings this class action against Farmers Insurance Company, Inc.; Farmers Group, Inc. Farmers Insurance Exchange; Fire Insurance Exchange; Truck Insurance Exchange and Does 1 through 20, inclusive (collectively, "Defendants" or "Farmers"), and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is a civil action seeking relief arising from Plaintiff's contract of insurance with the Defendants.

2.      Plaintiff and others across the United States purchased commercial property insurance from Farmers to protect their businesses in the event that they had to temporarily shut down.  These businesses expected Defendants' insurance policies to protect them and cover business income losses in in the event that government officials ordered them to stop operations and refrain from using the property.  However, despite collecting billions of dollars in premiums from Plaintiff and other similarly situated businesses, Farmers is now refusing to pay legitimate business interruption claims.

3.      In light of the novel Coronavirus strain which causes COVID-19, state and local governments throughout the country have issued "stay-at-home" and "shelter-in-place" orders requiring all non-essential businesses to cease operations and close all physical locations (collectively, "COVID-19 Civil Authority Orders").  As a result of these COVID-19 Civil Authority Orders, Plaintiff, which operates a dance studio and event space, closed its business on March 16, 2020 and has remained closed for normal operations since then.

2
CLASS ACTION COMPLAINT

4.      Despite the fact that Plaintiff's and class members' "All-Risk" Standard Commercial Property Insurance Policy with Farmers (the "Policy" or "Policies") provides business interruption coverage, Farmers has denied its obligation to pay for business income losses and extra expenses incurred by Plaintiff and class members for the loss of property arising from COVID-19 Civil Authority Orders.

5.      Plaintiff brings this action on behalf of a nationwide class and California sub-class of policyholders who similarly purchased standard Farmers insurance contracts, which provide coverage for business income loss and extra expenses incurred by policyholders that have suffered losses due to preventative measures implemented by governmental bodies in the form of the COVID-19 Civil Authority Orders.

6.      Plaintiff, individually on behalf of the classes, brings the following causes of action: (1) declaratory judgment holding that Defendants are contractually obligated to pay business income and extra expenses incurred due to Plaintiff's and the Class members' compliance with COVID-19 Civil Authority Orders implemented as preventative measures to reduce the spread of the novel coronavirus strain which causes COVID-19 pursuant to 28 U.S.C. § 2201; and (2) breach of contract.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because members of the Classes are citizens of states different from one or more of the Defendants and the amount in controversy exceeds $5 million, exclusive of costs and interest.

CLASS ACTION COMPLAINT

8.      This Court has personal jurisdiction over Defendants because they maintain their headquarters in California and/or do a substantial amount of business in California, thereby intentionally availing themselves of the laws of the state.  Furthermore, the conduct at issue took place in California because the Plaintiff and Farmers entered into the contract of insurance in California and the Plaintiff's Covered Premises is located in California.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## PARTIES

10.      Plaintiff is a California limited liability corporation with its principal place of business in Torrance, California.  Plaintiff is owned and operated by David Estrada, a competitive dancer for nearly 25 years and a dance instructor for nearly 20 years.  Plaintiff opened its doors in August 2018 and has since served as a dance studio for residents of the South Bay of Los Angeles and surrounding areas.  Plaintiff offers both private and group dance lessons in its studio.  When the space is not being used for dance lessons, it serves as a beautiful event space, which is able to host up to 100 guests.  Because Plaintiff's business contemplates the congregation of people and close personal interactions, the business has been closed since March 16, 2020 in response to COVID-19 Civil Authority Orders issued by California, the city and county of Los Angeles, and the city of Torrance.  As a result of the COVID-19 Civil Authority Orders, Plaintiff has experienced significant business income losses and incurred extra expenses by having to cancel all private dance lessons, group classes, and event space rentals.

11.     Defendant, Farmers Group, Inc., is a California corporation with its headquarters and principal place of business in Los Angeles, California.  Farmers Group, Inc. also does business as Farmers Underwriters Association, and owns the service marks, "Farmers Insurance Group of Companies" and "Farmers Insurance Group."

12.     Defendant, Farmers Insurance Company, Inc., is a Kansas corporation with its principal place of business in Woodland Hills, California.  It owns subsidiaries, directly and indirectly, that issue, *inter alia*, property insurance.

13.     Defendant, Farmers Insurance Exchange, is a California corporation with its principal place of business in Woodland Hills, California.  Farmers Insurance Exchange is one of three reciprocal insurers operating under the Farmers Insurance Group of Companies and is duly qualified and licensed to issue insurance in the State of California and other states.

14.     Defendant, Fire Insurance Exchange, is a California corporation with its principal place of business in Woodland Hills, California.  Fire Insurance Exchange is one of three reciprocal insurers operating under the Farmers Insurance Group of Companies and is duly qualified and licensed to issue insurance in the State of California and other states.

15.     Defendant, Truck Insurance Exchange, is a California corporation with its principal place of business in Woodland Hills, California.  Truck Insurance Exchange is one of three reciprocal insurers operating under the Farmers Insurance Group of Companies and is duly qualified and licensed to issue insurance in the State of California and other states.

16.     At this time, Plaintiff is unable to ascertain the true names and capacities of the defendants sued herein under the fictitious names Does 1 through 20, inclusive.  Plaintiff is

CLASS ACTION COMPLAINT

informed and believes that each of the fictitiously named defendants are responsible in some manner for the unlawful conduct alleged herein.

17.    Farmers, through Farmers Insurance Exchange, issued Policy No. 60670-24-54 to Plaintiff effective June 8, 2018.  Plaintiff renewed the same Policy on June 8, 2019 and June 8, 2020.  Plaintiff has faithfully paid all premium amounts when due and currently maintains the same Policy.

## FACTUAL ALLEGATIONS

### A.    The Global COVID-19 Pandemic

18.    COVID-19 is an infectious disease caused by a recently discovered novel Coronavirus known as SARS-CoV-2.  The Coronavirus is extremely contagious and physically infects and stays on surfaces of objects or materials for an extended period of time.  For example, the virus remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard, and up to two to three days on plastic and stainless steel.

19.    The first case of COVID-19 in the United States was confirmed in the State of Washington on January 20, 2020.  *See First Case of 2019 Novel Coronavirus in the United States*, THE NEW ENGLAND JOURNAL OF MEDICINE (Mar. 5, 2020), https://www.nejm.org/doi/full/10.1056/NEJMoa2001191.

20.    According to news reports, the United States Centers for Disease Control and Prevention ("CDC") confirmed the first COVID-19 case in California on January 26, 2020. *See Two Confirmed Cases of Novel Coronavirus in California*, CALIFORNIA DEP'T OF HEALTH (Jan. 26, 2020), https://www.cdph.ca.gov/Programs/OPA/Pages/NR20-001.aspx.

CLASS ACTION COMPLAINT

21.    On January 30, 2020, the World Health Organization ("WHO") declared that the Coronavirus outbreak constituted a public health emergency of massive proportions, able to affect every country in the world.

22.    On February 26, 2020, the CDC announced the first reported California COVID-19 case resulting from community spread. *See CDC Confirms Possible Instance of Community Spread of COVID-19 in U.S.*, CENTERS FOR DISEASE CONTROL (Feb. 26, 2020), https://www.cdc.gov/media/releases/2020/s0226-Covid-19-spread.html.

23.    On March 4, 2020, the first COVID-19 fatality was reported in California. *See California Reports First Coronavirus Death as Symptoms Swirl on Cruise Ship*, N.Y. Times (Mar. 4, 2020), https://www.nytimes.com/2020/03/04/us/coronavirus-california.html.

24.    On March 11, 2020, the WHO declared that the Coronavirus was a worldwide pandemic.

25.    On March 13, 2020 the President of the United States declared the COVID-19 pandemic to be a national emergency.

26.    Soon thereafter, the CDC issued guidance indicating that people should not attend gatherings of more than 10 people.  People in congregate environments, including places where people live, eat, and meet in close proximity, face increased exposure to COVID-19. *See Interim Guidance for Coronavirus Disease 2019 (COVID-19)*, CENTERS FOR DISEASE CONTROL (Mar. 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/mass-gatherings-ready-for-covid-19.html.

27.    As of June 9, 2020, there have been nearly two million confirmed cases in the United States and more than 110,000 deaths.  In Los Angeles County alone, there have been

7
CLASS ACTION COMPLAINT

nearly 65,000 cases and more than 2,500 deaths. *See COVID-19 By the Numbers*, CAL. DEP'T

PUBLIC HEALTH,

https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx#COVID-19%20by%20the%20Numbers (last accessed June 9, 2020); *see also COVID-19 in Los Angeles County*, COUNTY OF LOS ANGELES PUBLIC HEALTH,

http://publichealth.lacounty.gov/media/coronavirus/ (last accessed June 9, 2020).

###### B.    Civil Authority Proclamations and Orders by State and Local Governments

28.    On March 4, 2020 California Governor Gavin Newsom declared a state of

emergency and, on March 12, 2020, issued an executive order directing California residents to

cancel large, non-essential gatherings. *See* State of California Executive Order N-25-20 (Mar. 4,

2020) available at https://www.gov.ca.gov/wp-content/uploads/2020/03/3.12.20-EO-N-25-20-COVID-19.pdf (last accessed June 9, 2020).

29.    On March 19, 2020, Governor Newsom issued Executive Order N-33-20,

requiring "all individuals living in the State of California to stay home or at their place of

residence except as needed" for essential services and mandating that individuals practice strict

social distancing. Order N-33-20 incorporated by reference California Government Code §8665,

which provides that "[a]ny person . . . who refuses or willfully neglects to obey any lawful

order . . . issued as provided in this chapter, shall be guilty of a misdemeanor and, upon

conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000)

or by imprisonment for not to exceed six months or by both such fine and imprisonment." As a

result, all California businesses which were not part of an essential critical infrastructure sector,

including Plaintiff's business, were ordered to close their doors.  *See* California Executive Order N-33-20, https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf (last accessed June 9, 2020).

30.    On March 16, 2020, the County of Los Angeles issued the "Safer at Home Order for Control of COVID-19," which required the closure of all non-essential businesses and mandated that people socially distance from one another.  The County's order banned indoor gatherings of at least 50 people and immediately required the closure of numerous businesses, including Plaintiff's.  *See Health Officer Order For the Control of COVID-19*, LOS ANGELES COUNTY (Mar. 16, 2020), https://www.weho.org/home/showdocument?id=44008.

31.    The County's order has been revised from time to time in the past several months, but, most recently, the Los Angeles County Department of Public Health issued its "Reopening Safer at Work and in The Community for Control of COVID-19" Order on May 29, 2020.  The Order loosens some restrictions, but still provides that "[a]ll persons living within the County of Los Angeles Public Health Jurisdiction should remain in their residences whenever practicable . . . [and] gatherings of people who are not part of a single household or living unit are prohibited . . . ."  Furthermore, "all events and gatherings" to be hosted by businesses continue to be prohibited.  *See Reopening Safer at Work and in the Community for Control of COVID-19*, COUNTY OF LOS ANGELES PUBLIC HEALTH (May 29, 2020), http://www.publichealth.lacounty.gov/media/Coronavirus/docs/HOO/HO_Order_COVID-19_Safer_at_Work_and_in_the_Community_05292020_FINAL_WithAppendices.pdf.

32.    On March 19, 2020, the City of Los Angeles, via Mayor Eric Garcetti, issued its "Safer at Home" order "because, among other reasons, the COVID-19 virus can spread easily from person to person and *it is physically causing property loss or damage due to its tendency*

*to attach to surfaces for prolonged periods of time.*"  *See Safer at Home*, CITY OF LOS ANGELES (Mar. 19, 2020) (emphasis added),

https://www.lamayor.org/sites/g/files/wph446/f/page/file/20200527%20Mayor%20Public%20Order%20SAFER%20AT%20HOME%20ORDER%202020.03.19%20%28REV%202020.05.27%29.pdf.

33.    The City of Los Angeles' "Safer at Home" order has been revised numerous times over the course of the past several months.  Indeed, on June 1, 2020, Mayor Garcetti and the City issued a slightly less restrictive "Safer L.A. Order," which still generally encourages residents to remain home, but does "allow more activities with certain modifications, based on health and safety needs."  Still, "[a]ll public and private gatherings of any number of people occurring outside a residence are prohibited."  *See SAFER L.A.*, CITY OF LOS ANGELES (June 1, 2020),

https://www.lamayor.org/sites/g/files/wph446/f/SAFERLAORDER2020.03.19%28REV2020.06.01%29.pdf.

34.    The City of Torrance, where Plaintiff's business is located, has issued a number of executive orders, beginning on March 16, 2020 and extending through May 29, 2020, providing numerous directives including, *inter alia*:  the closure of movie theaters, live performance venues, bars and nightclubs, and all restaurants (except for pick-up or delivery service); the prohibition of all street fairs, block parties, community runs and cycling events, and more; measures mandating social distancing and the usage of face covers, such as masks; and the closure of numerous parks, beaches, and public parking lots.  *See Executive Orders*, CITY OF TORRANCE CALIFORNIA, https://www.cityoftorranceca.com/executive-orders.html (last accessed June 9, 2020).  The COVID-19 Civil Authority Orders issued by the City of Torrance were taken

to "provide for protection of life or property" and have prevented Plaintiff from utilizing its premises for normal business operations since March 16, 2020.

35.     Altogether, 49 state governments have enacted at least one COVID-19 Civil Authority Order prohibiting or severely limiting the operations of restaurants, event spaces, and other non-essential businesses. In addition to California, all but six states have enacted a COVID-19 Civil Authority Order, including "stay-at-home" or "shelter-in-place" orders; 35 states closed all non-essential businesses for some period of time, with other states taking measures to limit business operations. All 50 states closed schools, and all but one state (South Dakota) closed restaurants and bars for services other than take-out and delivery, although some states are permitting some restaurants and bars to gradually re-open at limited capacity.

**C.     Standard Commercial Policy Held By Plaintiff and Class Members**

36.     The Policies issued to Plaintiff and other members of the Class are standard commercial property "all-risk" policy that cover all loss or damage to Plaintiff's and class members' covered premises, other than loss or damage which is expressly excluded.

37.     The Policies are a standard form used by Farmers for all insureds with the applicable commercial property coverage.

38.     Plaintiff's Policy is effective as of June 8, 2018 and provides various coverages, including business income and extra expense coverage, which, generally, would indemnify Plaintiff for lost income and profits in the case its business was shut down.

39.     Specifically, Plaintiff's Special Property Coverage Form, Form BP 00 02 01 97, provides coverage as follows:

**(1) Business Income**

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension [1] of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. This loss or damage must be caused by or result from a Covered Cause of Loss . . . . We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months[2] after the date of direct physical loss or damage.

**(2) Extended Business Income**

> If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

> (a)    Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

> (b)    Ends on the earlier of:

>> i.    The date you could restore your "operations," with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

>> ii.    30 consecutive days after the date determined in (2)(a) above.

*See* Exhibit 1, at 82-83.

-----

[1] Plaintiff's Policy contains an Endorsement, Form J7138, which amends the business income coverage language to provide that "suspension means: (a) The partial slowdown or complete cessation of your business activities; or (b) That a part or all of the described premises is rendered untenable, if coverage for Business Income applies." Exhibit 1, at 103.

[2] Plaintiff's Policy contains an Endorsement, Form E6289101, which amends the standard business income and extra expense coverage outlined in Form BP 00 02 01 97 and provides that "[t]he maximum period for which we will pay for loss of Business Income that you sustain during the 'period of restoration' is *18 consecutive months* after the date of direct physical loss or damage." *Id.*, at 102 (emphasis added).

40.     Plaintiff's Special Property Coverage Form, Form BP 00 02 01 97, further provides coverage as follows:

**i.      Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for necessary Extra Expense will begin immediately after the time of that action and ends:

(1)     3 consecutive weeks after the time of that action; or

(2)     When your Business Income coverage ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance.

*See id.*, at 84.

41.     In addition, Plaintiff's Special Property Coverage Form, Form BP 00 02 01 97, further provides coverage as follows:

**g.      Extra Expense**

(1)     We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located. With respect to the

13
CLASS ACTION COMPLAINT

requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(a)    The portion of the building which you rent, lease or occupy; and

(b)    Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(2)    Extra Expense means expense incurred:

(a)    To avoid or minimize the suspension[3] of business and to continue "operations":

(i)    At the described premises; or

(ii)    At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

(b)    To minimize the suspension of business if you cannot continue "operations"

• • • •

We will only pay for Extra Expense that occurs within 12 consecutive months[4] after the date of direct physical loss or damage.  This Additional Coverage is not subject to the Limits of Insurance.

_____

[3] Plaintiff's Policy contains an Endorsement, Form J7138, which amends the extra expense coverage language to provide that "suspension means: (a) The partial slowdown or complete cessation of your business activities; or (b) That a part or all of the described premises is rendered untenable, if coverage for Business Income applies."  *Id.*, at 103.

[4] Plaintiff's Policy contains an Endorsement, Form E6289101, which amends the standard business income and extra expense coverage outlined in Form BP 00 02 01 97 and provides that "[w]e will only pay for Extra Expense that occurs within *18 consecutive months* after the date of direct physical loss or damage."  *Id.*, at 102 (emphasis added).

14
CLASS ACTION COMPLAINT

*See id.*, at 83-84.

42.     Under Plaintiff's Special Property Coverage Form, Form BP 00 02 01 97, Business Income is defined as:

> (i)     Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage has occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and
>
> (ii)    Continuing normal operating expenses incurred, including payroll.

*See id.*, at 82.

43.     The interruption of Plaintiff's and other class members' businesses was not caused by any of the exclusions set forth in the applicable Policies, including Plaintiff's Policy.

44.     Plaintiff's Policy contains a Mold and Microorganism Exclusion, standard Endorsement Form E4009, which purports to exclude "[a]ny loss, cost or expense arising out the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effect of 'mold' or 'microorganism', by any insured or by any other person or entity." *See id.*, at 129.

45.     The Mold and Microorganism Exclusion in Plaintiff's Policy does not exclude coverage for Plaintiff's business income and extra expense losses because the covered cause of loss was not mold or microorganism but the prevention of the spread of COVID-19. Specifically, Plaintiff is unable to utilize its business premises for normal operations because COVID-19 Civil Authority Orders were issued to prevent the potential spread of COVID-19 in the future, not because Coronavirus was found on or in the vicinity of Plaintiff's covered premises.

46.     Plaintiff's Policy also contains an Exclusion of Loss Due to Virus or Bacteria, standard Endorsement Form J6316, which excludes "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *See id.*, at 130.

47.     The Virus or Bacteria Exclusion in Plaintiff's Policy does not exclude coverage for Plaintiff's business income and extra expense losses because the covered cause of loss was not bacteria or the Coronavirus, but instead the prevention of the spread of COVID-19. Specifically, Plaintiff is unable to utilize its business premises for normal operations because COVID-19 Civil Authority Orders were issued to prevent the potential spread of COVID-19 in the future, not because Coronavirus was found on or in the vicinity of Plaintiff's covered premises.

48.     Plaintiff's Policy also contains a Limited Coverage for Fungi, Wet Rot, Dry Rot, and Bacteria provision, which excludes from coverage:

(a)     The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi," wet or dry rot or bacteria; or

(b)     The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

*See id.*, at 134.

49.     Plaintiff's Limited Coverage for Fungi, Wet Rot, Dry Rot, and Bacteria does not exclude Plaintiff's losses because the covered cause of loss was not fungi, wet rot, dry rot, or bacteria, but instead the prevention of the spread of COVID-19. Specifically, Plaintiff is unable

16
CLASS ACTION COMPLAINT

to utilize its business premises for normal operations because COVID-19 Civil Authority Orders were issued to prevent the potential spread of COVID-19 in the future, not because Coronavirus was found on or in the vicinity of Plaintiff's covered premises.

**D.    Farmers' Denial of Plaintiff's Claim**

50.    Plaintiff's owner, David Estrada, first reached out to his Farmers agent on March 16, 2020 to discern whether he could obtain coverage under Plaintiff's Farmers policy for lost business income in the form of, *inter alia*, cancelled lessons, classes, and venue rentals.

51.    After being told that Farmers likely would deny any potential claim, Plaintiff's claim was filed with Farmers on May 4, 2020, seeking business interruption coverage.  A day later, on May 5, 2020, Farmers formally denied Plaintiff's claim.

52.    Farmers denied Plaintiff's claim without any inspection or review of Plaintiff's physical location and has thereby waived any right to do so at a later date.

53.    In the formal denial letter, Farmers indicated that there could not be coverage because there is no direct physical loss of or damage to property at the described premises from a covered cause of loss.

54.    Farmers' rejection of Plaintiff's claim is unfounded because, as explained, the loss of access to the Plaintiff's covered premises for normal business operations is caused by COVID-19 Civil Authority Orders, which were issued to prevent the potential spread of COVID-19 in the future, not because Coronavirus was found on or in the vicinity of Plaintiff's covered premises.  Indeed, Plaintiff's and class members' Policies define "Covered Cause of Loss" as "Risks of Direct Physical Loss unless the loss is: a. Excluded . . . or b. Limited."  Exhibit 1, at 80.

55.     Furthermore, Plaintiff's and Class members' Policies provide coverage "for the actual loss of Business Income you sustain and the necessary Extra Expense *caused by action of civil authority that prohibits access to the described premises* due to direct physical loss of or damage to property, other than at the described premises, *caused by or resulting from any Covered Cause of Loss*." *Id.*, at 84 (emphasis added).  The COVID-19 Civil Authority Orders have prohibited Plaintiff's and class members' access to their premises for carrying out normal business operations.  The direct physical loss of the property is caused, not by the actual presence of Coronavirus on Plaintiff's or class members' properties, but, instead, by the need to prevent the future spread of the Coronavirus.

**E.     Farmers Has Denied Insureds' Claims Nationwide**

56.     The Coronavirus and COVID-19 are negatively impacting private commercial property throughout the United States and California, threatening the survival of thousands of restaurants, event spaces, retail establishments, and other businesses that have had their operations suspended due to COVID-19 Civil Authority Orders.

57.     Farmers does not intend to cover losses caused by the COVID-19 pandemic as part of business interruption coverage.  Farmers denied Plaintiff's claim within a day of filing, and earlier conversations between Plaintiff and its Farmers agent demonstrate that Farmers has planned to deny claims such as Plaintiff's as part of a uniform course of action.

58.     As a result, many small businesses that maintain commercial insurance policies with business interruption coverage will have significant uninsured losses absent declaratory relief from this Court.  Indeed, even if state and local governments re-open, small businesses will continue to experience diminishing revenues due to the loss of covered property and will almost

18
CLASS ACTION COMPLAINT

certainly still be under social-distancing mandates, especially inside event spaces like Plaintiff's, where people congregate together.

59.    A declaratory judgment determining that the business income loss and extra expense coverage provided in standard Farmers' commercial property insurance policies applies to the suspension, curtailment, and interruption of business operations resulting from measures put into place by civil authorities is necessary to prevent Plaintiff and similarly situated class members from being denied critical coverage for which they have paid premiums.

## CLASS ACTION ALLEGATIONS

60.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) as a class action on behalf of itself and all others similarly situated for the purpose of asserting claims alleged in this Complaint on a common basis.

61.    Plaintiff seeks certification of the following nationwide class ("Nationwide Class," collectively, with the "Sub-Class" defined below, "Class" or "Classes"):

> All persons and entities who have entered into a standard commercial property insurance policy with a Farmers insurance carrier to insure property in the United States, where such policy provides for business income loss and extra expense coverage, and who have suffered losses due to measures put in place by a COVID-19 Civil Authority Order.

62.    Plaintiff also seeks certification of the following Sub-Class:

> All persons and entities who have entered into a standard commercial property insurance policy with a Farmers insurance carrier to insure property in California, where such policy provides for business income loss and extra expense coverage, and who have suffered losses due to measures put in place by a COVID-19 Civil Authority Order.

19
CLASS ACTION COMPLAINT

63.     Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns.  Also excluded from the Class are any judicial officers presiding over this matter, members of their immediate family, members of their judicial staff, and any Judge sitting in the presiding court system who may hear an appeal of any judgment entered.

64.     Plaintiff reserves the right to amend or modify the Class or Sub-Class definitions with greater specificity or division after having had an opportunity to conduct discovery.

65.     **Risk of Inconsistent or Varying Adjudications.  Fed. R. Civ. P. 23(b)(1).**  As the proposed Classes include at least thousands of persons or entities who are insured for business income losses, there is a significant risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendants.  For example, declaratory relief may be entered in multiple cases, but the ordered relief may vary, causing Defendants to have to choose the court order with which they will comply.

66.     **Numerosity.  Fed. R. Civ. P. 23(a)(1).**  Consistent with Rule 23(a)(1), the members of the Classes are so numerous that the joinder of all members is impractical.  While the exact numbers of members in the Classes are unknown to Plaintiff at this time, it is believed that the Class is comprised of tens of thousands of persons and entities geographically dispersed throughout the United States and the Sub-Class is comprised of thousands of persons and entities spread throughout the State of California.  The names and addresses of Class and Sub-Class members are available from Defendants' records, and members of the Class and Sub-Class may

20
CLASS ACTION COMPLAINT

be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include electronic mail, U.S. Mail, internet notice, and/or published notice.

67. **Predominance of Common Issues. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual members of the Classes. The common questions include:

a. Whether the Policy covers losses created by COVID-19 Civil Authority Orders;

b. Whether the need to reduce and/or prevent the spread of the COVID-19 pandemic is excluded from Plaintiff's and Class members' standard commercial property insurance Policies;

c. Whether the need to reduce and/or prevent the spread of COVID-19 constituted physical loss or damage and is a Covered Cause of Loss under the Policy;

d. Whether Farmers has repudiated and breached the insurance Policies with business interruption coverage by denying or intending to deny claims for coverage;

e. Whether Farmers' violations of the standard commercial property insurance Policies were committed intentionally, recklessly, or negligently; and

f. Whether Plaintiff and Class members have suffered damages as a result of Farmers' breach.

68. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of Class members because Plaintiff and members of the Classes have been subjected to the same

unlawful conduct and damaged in the same way.  Defendants' conduct that has given rise to the claims of Plaintiff and other insureds is the same for all members of the Classes.

69.    **Adequacy.  Fed. R. Civ. P. 23(a)(4).**  Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Classes because Plaintiff is a member of the Classes and is committed to pursuing this matter against Defendant to obtain relief for all of the Insureds. Plaintiff has no conflicts of interest with the Classes and entered into a Policy that is largely similar to the Policies that Class members entered into with Farmers.  Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in litigating consumer claims.  Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Classes.

70.    **Superiority.  Fed. R. Civ. P. 23(b)(3).**  Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation.  Here, the damages suffered by Plaintiff and the members of the Classes are relatively small compared to the burden and expense required to individually litigate their claims against Defendants, and thus, individual litigation to redress Defendants' wrongful conduct would be impracticable.  Individual litigation by each member of the Classes would also strain the court system.  Moreover, individual litigation creates the potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the

CLASS ACTION COMPLAINT

benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

71.    **Declaratory Relief.**  Class certification is also appropriate under Rule 23(b)(2) and (c).  Defendants, through their form Policies with Plaintiff and members of the Classes, acted or refused to act on grounds generally applicable to the Classes, making uniform injunctive and declaratory relief appropriate on a Class-wide basis.  Moreover, Defendants continue to maintain that business income losses and extra expenses are not covered under their form insurance policies, thus making declaratory relief a live issue and appropriate to the Class as a whole.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment Against All Defendants)

72.    Plaintiff realleges and incorporates by reference the preceding paragraphs above as if fully set forth herein.

73.    Plaintiff brings this cause of action individually and on behalf of the other members of the Classes.

74.    The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

75.    Under Plaintiff's and Class members' business income coverage, Defendants must "pay for the actual loss of Business Income you sustain due to the necessary suspension of 'your operations' during the 'period of restoration.'  The suspension must be caused by direct physical loss of or damage property . . . ."  *See* Exhibit 1, at 82.

23
CLASS ACTION COMPLAINT

76.    Under Plaintiff's and Class members' extra expense coverage, Defendants must pay for expenses incurred "to avoid or minimize the suspension of business and to continue 'operations' . . . [and those incurred] to minimize the suspension of business if you cannot continue 'operations.'"  Again, Defendants must pay for expenses which Plaintiff and Class members "would not have incurred if there had been no direct physical loss or damage to property . . . ." *See id.*, at 83.

77.    Under Plaintiff's and Class members' civil authority coverage, Defendants must pay for "the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." *See id.*, at 84.

78.    Defendants' interpretation that the requirement of "physical loss" is not satisfied by losing physical access or use of Plaintiff's property is wrong.  The undefined phrase "direct physical loss" is reasonably construed to mean the direct loss of the ability to physically access or use property.  Prohibiting the ability to access or use commercial property for normal business operations constitutes a physical loss of said property.  Since exclusions of coverage must be narrowly construed, the language drafted by the insurer with ambiguity should ordinarily be construed against the drafter and in favor of Plaintiff and members of the Classes.

79.    An actual controversy has arisen between Plaintiff and members of the Class and Defendants as to the rights, duties, responsibilities, and obligations of the parties under the Policies in that Plaintiff and members of the Classes contend, and Defendants dispute and deny, that:

a.   The COVID-19 Civil Authority Orders constitute a prohibition to and physical loss of access to Plaintiff's business premises;

b.   The prohibition of access and use for normal business operations by the Orders has specifically prevented access to insureds' properties as defined in the Policies;

c.   The COVID-19 Civil Authority Orders issued by governmental official trigger coverage under the Policies;

d.   The Policies include coverage for losses caused by the need to prevent the spread of the Coronavirus;

e.   The Policies provide coverage to Plaintiff and members of the Classes for any current and future COVID-19 Civil Authority Order which closes businesses due to the need to prevent the spread of the Coronavirus under the civil authority coverage parameters of the Policy; and

f.   Resolution of the duties, responsibilities, and obligations under the Policies is necessary as no adequate remedy at law exists and declaration of the Court is needed to resolve the dispute and controversy.

80.   Plaintiff, individually and on behalf of members of the Class and Sub-Class, seeks a Declaratory Judgment finding that the Policies cover business income and extra expenses during the period of restoration caused by or resulting from governmental action that forced Plaintiff and members of the Classes to suspend operations, subject to no limitations or exclusions under the Policies.

## SECOND CAUSE OF ACTION
### (Breach of Contract Against All Defendants)

81.   Plaintiff realleges and incorporates by reference the preceding paragraphs above as if fully set forth herein.

82.   Plaintiff brings this Cause of Action individually and on behalf of the other members of the Classes.

25
CLASS ACTION COMPLAINT

83.    Plaintiff's Policy, as well as those Policies of other Class members, are contracts under which Farmers was paid premiums in exchange for its promise to pay Plaintiff's, and the other Class members', losses for claims covered by the Policy.

84.    As described herein, the business income losses and extra expenses incurred by Plaintiff and Class members are covered losses under the Policies.

85.    As part of standard business interruption and extra expense coverages, Farmers agreed to pay for Plaintiff's and Class members' loss of business income and extra expenses incurred due to the necessary suspension of its operations during the "period of restoration." "Business Income" under the Policies means the "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred," as well as "[c]ontinuing normal operating expenses incurred, including payroll."  "Extra Expense" under the Policies are those expenses incurred "to avoid or minimize the suspension of business and to continue 'operations' . . . [and those incurred] to minimize the suspension of business if you cannot continue 'operations.'"  *See id.*, at 83.

86.    The COVID-19 Civil Authority Orders caused direct physical loss and damage to Plaintiff's and Class members' commercial premises, requiring the suspension of normal business operations.  Accordingly, losses caused by the COVID-19 Civil Authority Orders triggered the business income and extra expense provisions of the Policies.

87.    The Policies also provides for "Civil Authority" coverage, which promises to pay "the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or

damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." *See id.*, at 84.

88.     The COVID-19 Civil Authority Orders have prohibited Plaintiff and Class members to engage in normal business operations at their commercial premises and have caused Plaintiff and Class members to lose business income and incur extra expenses.  Accordingly, the COVID-19 Civil Authority Orders triggered the civil authority provision of Plaintiff's and other Class members' Policies.

89.     Plaintiff and other Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Farmers and/or Farmers is estopped from asserting them.  Yet Farmers has abrogated its insurance coverage obligations under the clear and unambiguous terms of the Policies.

90.     By denying coverage for any business losses and expenses incurred by Plaintiff and other members of the Classes in connection with the COVID-19 Civil Authority Orders, Farmers has breached its coverage obligations under the Policies.

91.     As a result of Farmers' breaches of contract, Plaintiff and other members of the Classes have sustained substantial damages for which Farmers is liable, in an amount to be established at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated individuals and entities, prays for relief and judgment against Defendants as follows:

CLASS ACTION COMPLAINT

A.     Determining that this action is a proper class action under one or more provisions of Federal Rule of Civil Procedure 23, appointing Plaintiff to serve as a Class Representative and appointing its counsel to serve as Class Counsel;

B.     Issuing a Declaratory Judgment declaring the parties' rights and obligations under the insurance Policy at issue;

C.     Awarding Plaintiff and the Classes compensatory damages against Defendants, jointly and severally, for all damages sustained as a result of Defendants' breach of the Policies, in an amount to be proven at trial, including interest thereon;

D.     Awarding Plaintiff and the Classes pre-judgment and post-judgment interest, as well as reasonable attorneys' fees incurred in this action; and

E.     Awarding such other relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: June 19, 2020

**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**

*/s/ James C. Shah*

James C. Shah (SBN 260435)
Jaclyn M. Reinhart (SBN 317622)
1230 Columbia Street, Suite 1140
San Diego, CA 92101
Telephone: 619-235 2416
Facsimile:  866-300-7367
Email: jshah@sfmslaw.com
         jreinhart@sfmslaw.com

28
CLASS ACTION COMPLAINT

Ronald Kravitz
**SHEPHERD, FINKELMAN, MILLER**
**& SHAH, LLP**
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: rkravitz@sfmslaw.com

***Attorneys for Plaintiff***

29
CLASS ACTION COMPLAINT